Good morning, Your Honours. Jean Rees, President of the Council for Petitioner Wahid Mansaray. Mr. Mansaray's adverse credibility determination is based upon a single purported inconsistency and three speculations. Contrary to what the government argued in its brief, the Board made clear that it only relied upon these four reasons in upholding Mr. Mansaray's adverse credibility determination. These four reasons cannot form the basis of the adverse credibility determination because they depart from substantial evidence in the record. And given the totality of the circumstances, they have no bearing on Mr. Mansaray's veracity about what happened to him in Sierra Leone. Counsel, what is the proper scope of our review here? Your Honour, the scope of the review is limited to the BIA decision. Here, the BIA did not adopt the IJ's decision. The Board was clear it didn't rely upon all the reasons. The Board specifically said it was the four concerns that it mentioned on page two of its decision that had its conclusion that upheld the adverse credibility determination. So, it's only the four reasons discussed in the BIA decision. So, is it your position that we do not look at the IJ determination? We just look at the BIA decision and the four grounds that it relies on? Yes, Your Honour, because the BIA has ways to adopt the immigration decision or to adopt it and add its own reasons. Here, unequivocally, the BIA states that it's only the concerns it mentions and that it doesn't rely upon the IJ reasons in order to reach its conclusion. And so, this court scope is limited to the BIA decision. So, why don't we start with the medical document? Because this is a document that is dated on the day he would have been admitted and says he was treated for a week. And it has its only diagnosis, general body pain and left ear injury. And his testimony is that he was stabbed in the knees, I believe, and that would seemingly be the most serious thing it has not mentioned. Why isn't that enough to support an adverse credibility determination under a substantial evidence standard? Your Honour, the BIA refers to the medical records dating on the date of entry as opposed to the date of discharge as the reason why that would support an adverse credibility. So, the court can only review the dates and not the IJ's rationale regarding the injuries discussed in the report in Mr. Mansry. So, the date alone, whether it would be dated on the date of his admission or the date of discharge. Well, when they say that they find that the adverse credibility determination is not clearly erroneous based on this document, and then they say, for example, and then they list certain things, I am limited to only the one piece, the sub-argument of that particular point that they have identified when they're saying the whole finding is not clearly erroneous. Is that right? Well, Your Honour, the BIA didn't say that IJ's whole finding with regard to the medical document was not clearly erroneous. It said, it cited to its aforementioned reason. And the aforementioned reason here is that the immigration judge questioned why the document was dated, the date of the attack, yet described the risk of violence treatment for a week before being discharged. And then the board got on to discuss the respondent's explanation. The document does say that he had bruises on his legs and upper limbs, and upper limb is an arm. So, although the IJ said it didn't say anything about his arms, he did say about his arms. And although he said he didn't say anything about his legs, he did say something about his legs. His knees are on his legs. So, I don't really understand it. I mean, what's contradictory about that, the date thing? Who knows why they put that date on? I don't know. I mean, they could have some policy of putting the date of admission on and not the date of discharge on them. Yes, and that's why. Don't you have to show the standard? Is that we would be compelled to find this to be erroneous? I mean, under the clearly, under the substantial evidence standard that we have to agree with your reading of this document as opposed to the BIA's? Yes, Your Honor, but this is, the document is completely speculative as to the date of when it would be dated. And the evidence in the record does not suggest that there's any other, that there's a procedure. In fact, Mr. Mansoury testified that he asked the doctor for the document, and the doctor said it would be dated the date that he came in for his injury. So the record, you know, given the totality of the circumstances, the only evidence in the record is that the doctor dated it the date he came in, and that's why it's dated. And additionally, even under, you know, Ren v. Holder, the courts found that there's even discrepancies between dates, and it's not our position that this is even a discrepancy in the date, but this is a seven-day discrepancy if you're, you know,  Counsel, there is no determination here that this document was somehow fraudulent or procured by fraud. Isn't that correct? That's correct, Your Honor. Nor any comment by, you know, the IJ or BIA. That's correct, Your Honor. The fraudulent document. It's solely speculation about the date of the medical document. And that compels a reversal of the adverse credibility determination. The one contradiction. I mean, reading the transcript, it seems that although this gentleman went to school in English for many years in Sierra Leone, his English didn't seem to be very good. In fact, it seemed pretty bad. So I don't know what one does with that. The one contradiction, which is what he told the Border Patrol officer about why this group was after him and why he was saying that. So what's your position on that? Your Honor, that contradiction is not wholly inconsistent. Mr. Mansouray provided pre-hearing statements that were recorded in about four documents. So this Border Patrol, this Border official document that adds this, they are against them. In the credible fear interview where he is being interviewed by an officer, he's consistent about being attacked because he's limba and he refuses to join. In another border official statement called the Form I-213, it says he was attacked because he refused to join because he was limba. In his I-589 application for asylum, he said he was attacked because he refused to join. So given the totality of the record evidence, including these pre-hearing statements made by immigration officials, he's consistently saying this is the reason. That added phrase that was taken shortly after he presented himself when he was detained, that they are against them, is not wholly inconsistent. The BIA interpreted it to mean the PORO society is against the limba ethnic group, but it could also mean the PORO society is against limba ethnic tribal members who don't join. So this inconsistency is trivial. That's one potential reading, but what the statement says is I was attacked by the PORO secret society for being part of the limba tribe, which they are against. And both IJ and the BIA construed that as being inconsistent with what he said is his testimony. And are we compelled to accept your contrary reading of that? You are, Your Honor, because in other statements, pre-hearing statements in the record, he is consistent. And the Shreffet v. Holder says the IJ cannot and the BIA cannot cherry pick something supporting an adverse credibility determination, neglecting those that counsel against it. And in this case, in the totality of the circumstances and the record, I'd just like to add one more thing. I mean, this is something where there are competing inferences that can be drawn. What's left of the substantial evidence standard and the Real ID Act's reform of credibility determinations if we just overturned because we would have drawn it another way? That's what you're asking us to do. No, that's not true, Your Honor, because what I'm asking you to do is consider the totality of the record evidence where he has made these consistent statements. And in addition, the BIA doesn't consider his explanation that he doesn't know why the border official said that. He said, I don't know why that was a mistake. The BIA doesn't mention that, and that has to be part of the consideration. This document is not a transcript, is that right? That's correct, Your Honor. It's called a transcript. Summary. It's notes. Yeah. In the form of questions and answers, but it is border patrol's summary of what was said. Is that accurate or not accurate? That is correct. It is a summary of what the border officer heard Mr. Mansari say. And, again, Mr. Mansari's English dialect clearly is not standard English, and he also is hearing impaired. He's unrepresented. And that also factors in. He also signed a juror at the end under penalty of perjury saying he reviewed every page and made no connections and that it was accurate. Is that correct? Yes. Okay. Well, your position is basically a totality of circumstances argument. Yes. That there were factors weighing in Mr. Mansari's favor which were not considered by the board. But more than just factors weighing in his favor, there's record evidence that is substantial record evidence that compels the reversal. Because this, and they were against them, phrase, given all of the evidence, including his multiple pre-hearing statements that are consistent with his testimony, doesn't support an adverse credibility funding under the Real ID Act because it's still a substantial evidence test. And there's not kind of this, you know, Shretha talks about this blank check given to judges. This is, you know, to the agency, this is, you know, it must be reasonable. And the stakes are high in asylum. And this is an erroneous decision that isn't supported by the rest of the record evidence. Okay. Your time is up. We'll give you a moment. Thank you. For Leo. Good afternoon, Your Honors. Sabatino F. Leo on behalf of the United States Attorney General. I asked yesterday, and I'm asking you now, why it is that the OJ lawyers are the one group that are not appearing? The position that we're getting right now is with regard to the security requirements of the Zoom meeting for purposes of these hearings, that it is a relatively insecure means and via access to when we are unable to do so also via our personal computers. So, for example. This is a public hearing, so why does it matter whether it's a hearing? Ma'am, Your Honor, I understand your position entirely. And I don't know if it's an issue with regard to the security requirements on our DOJ access, for example, IT requirements unable to do so, or it's based solely on security and whether or not they are secure. It's inconvenient for us that all the other lawyers seem to manage to appear. There's no security issue because it's a public hearing, and we'd appreciate some reconsideration. I would, anyway. Thank you. I will do so, ma'am and Your Honor, and I do apologize, and if I may, I will proceed. I think, as I was getting into, substantial evidence here supports the agency's adverse credibility finding. I think what's important to recognize is that this really is a totality of the circumstances case. Can I ask you a question about this jurat? The jurat says that I have initialed each page of this statement, but the copy I have that's from the record does not seem to reflect any initials on the pages. Is that right, or is there some other copy? The copy in the record is also the copy that I have, Your Honor, and that is correct with regard to that particular, with regard to the particular jurat situation as far as. . . So there are no initials, so that statement is inaccurate, so. . . I do not. . . Based upon my looking at the record right now, at first glance, I do not see any initials. Again, I have the same exact, the precise record as you do, Your Honor, so I do not see that. I don't think it undermines the reliability of that document. You put a lot of weight on the fact that he said, you know, he signed this and said he reviewed every page, but he also said he initialed every page, and he didn't. Understood, Your Honor, and I understand your concern with respect to that issue, but I think what's most important here is that he was given the opportunity to explain whether or not that was indeed an inconsistency, whether or not he did not sign that particular document, whether or not he did not review that particular document, and that was all done before the immigration judge, be it without counsel, and he responded in the affirmative, I will respectfully concede the issue with regard to. . . But he does indicate that he had the opportunity to read and review the document. I think what's most important with regard to that consistency, Your Honors, is that as the immigration judge recognizes in the record, an AR-45, is that he was initially nonresponsive when sort of pressed on that particular issue, and I think that would take us back a moment. . . Yes, Your Honor. If I read the record, he had serious hearing loss, and the records are substantial, and I don't remember when this particular one came up, but it appears that when the IJ was questioned, he had some earphones on, which were the interpreter earphones, and so he could hear, and then when he was being processed out by the government lawyer, they took off the earphones, and he really couldn't hear much of anything, and then they tried it by putting the earphones back on, and that did somewhat better. Now, I don't remember where this particular question came up, but he clearly was having hearing problems. I do not dispute the fact that, Your Honor, that there is a hearing impairment, and that is evident in the particular record. I will invite this Court's attention to reading the entire record, as though there was not an objection or any concern or any issue with regard to translation or a lack of understanding throughout the entire process, in fact. But there were answers that were clearly not matched to the questions, not in a nonresponsive way, but he'd say the opposite of what he meant, and then he'd say in a way that wasn't. . . I have to find some examples, but there were answers in which there clearly was a problem. . . . And I do understand that concern, Your Honor, and I think that's one of the aspects, really, of the REAL-ID Act we have to take into consideration here, is we are looking at what is, in fact, a cold, black-and-white record here, and we have to place some deference to the immigration judge, which I think the REAL-ID does appropriately to sort of make these determinations, and how the REAL-ID Act came in and said, based upon the totality of the circumstances, there's really no indication that there was any specific issue with regard to question and answer. In fact, I think the immigration judge actually. . . Yes, Your Honor. Looking at the statements, do you agree that the issue which is presented arises because of this phrase, which they are against? If you don't have that phrase, there's no issue of inconsistency. Would you agree? I think with regard to that particular inconsistency, Your Honor, looking at it in a vacuum, I agree, Your Honor, but I think we need to sort of look at this entire record as a whole. Yes, Your Honor. So, looking at the BIA decision, it says, in the absence of evidence that this sworn statement contains information that is incorrect or was obtained by coercion or duress, we find no basis to conclude that the document is not inherently trustworthy and admissible. Now, Mr. Mansari is pointing to his consistent testimony as to why he had been attacked. He's also put in the record the history from the conditions report regarding . . . the Poro organization and its relation to his tribe. Isn't that all evidence that should have been considered? I'm not suggesting results here. I'm just saying shouldn't it have been considered? I think this harkens sort of back to the initial question. I will say the agency here did not require the right of exegesis on everything, but actually considered all the evidence. But what we have here is a dispositive adverse credibility determination. So, based specifically on Petitioner's testimony here, he was determined to be adversely credible. So, the argument there, too, is, well, irrespective . . . and I am not conceding that the agency did not take into account country conditions evidence, but seriously, in this particular instance, the country conditions evidence are irrelevant because even if they were all true, based upon his entire totality of his testimony, including the medical document, which I'll get to in one moment if I have a moment here, that he was adversely credible. So, based upon that, and that was really the death knell, right? This was the dispositive issue in this particular case. Although the IJ went further, the BIA only affirmed the adverse credibility determination, which takes me back just one step to the initial question posed to Petitioner on the scope of review. I would respectfully disagree with Petitioner's contention on the scope of review here. And we have it in our brief, Flores-Lopez v. Holder, that where the board issues its own decision but relies in part on the immigration judge's reasoning, we review both decisions. Now, to the extent that that was adopted, and I think if you look at . . . While we have not mentioned or relied upon every reasoning, but they said they weren't relying. So, we're trying to respond based on the aforementioned concerns. So, they themselves, they were themselves to those concerns. And please forgive me if I'm misunderstanding your question here, but I read the BIA's decision. I look on page two of the certified record, which is page one of the BIA's decision, where it says the immigration found the respondent not credible. And then they go into discussing specific aspects and actually referring to the record. So, it's our position under Flores-Lopez, with regard to those specific portions of the immigration judge's decision that are . . . Yes, but then it says later at the bottom of page two of the decision, while we have not mentioned or relied upon every reason identified by the immigration judge for finding the respondent not credible, based on the aforementioned concerns, we find no clear errors. So, does that limit us to at least the four? Now, we have the further argument that even as to those four, we can only do the specific points. I'm not sure I agree with that, but are we limited to just those four? Well, I think that's a restrictive reading of that particular statement. I think that you're limited. I think the court is limited to the adverse credibility determination and specifically what is referenced herein. And, I think if you look at the IJ's decision pages that are referenced herein, and that's really what I pull out in my brief and respondent's brief. And, that's what we rely on. And, I would go further to your subsequent question. The fact that petitioner's reliance is that we can only, we're only concerned with the date on the medical record is not supported either by Flores Lopez, that's cited in my brief, nor by the very decision of the BIA here, which cites specifically. I'm going to give you some extra time because we took up some of your time. As you said, and then we'll give your opponents some additional time as well. Yes, Your Honor. As to the medical record, is the contention that it was a forgery? There is no indication here in the record that it is a forgery, meaning there's no evidence in the record that he had to create it. If all that, he didn't write it, and if the man who did write it has some habit of putting the date of entry into the hospital rather than the date of exit or the date that he wrote it, why does that make him less credible, him, the petitioner? Well, I think what it is, again, it's not looking at that document in a vacuum, but under the totality of the circumstances that he's coming in, and if there's no dispute that he was in this office, and I will, for purposes of discussion, that he was in this hospital and this document was referenced, was brought up. He discusses a lengthy period of time. He discusses stab wounds. He discusses being discharged seven days after this document is prepared. I'm sorry, Your Honor. He discusses being discharged seven days after the document was prepared. He discusses being discharged seven days after he got there, which is exactly what the document says. So I don't really understand what it is about this document that makes him less credible. Also, it does say that he had bruises on his legs and he had to see a number of extremities, but that's an arm, and it says that includes knees, so I don't understand what's inconsistent. And I understand, and there's no question with regard to your concerns or your statements with regard to that. I think what's important is, again, we're looking at this black-letter piece of paper and saying, well, it says X, but when you compare that to the Y of petitioner's testimony, they don't line up. And as a result, we can't come in. I would invite this court not to. I don't understand why they don't line up. I mean, if you're not – if it's not a forgery, the person who wrote it made a mistake on – either made a mistake on the date or has a policy of writing the date that way, what does that have to do with credibility of the petitioner? I – in answering your question, I believe it is the opinion, I think the agency got it right, that it undermines petitioner's credibility with regard to being attacked, being stabbed, bleeding. I don't understand what the connective is. The man who wrote the document, which no one's claiming isn't a real document, is sloppy and has an idiosyncratic way of dating his documents. What does that have to do with the petitioner's credibility? In defending the agency – You still haven't given me an answer to that. No, no, in defending the agency's decision here, they talk about the injuries he suffered, and I don't believe – and it's our position, and I agree with the agency here, that these conditions don't line up with what he's saying. So it very well could have been that he went to the hospital. If we don't dispute that, that doesn't necessarily suggest that he was beaten. Maybe he'd gone into a motorcycle accident and he went into the hospital. No, I understand your concerns with this document, Your Honor, and I do understand your concerns. And I think that, again, looking back on it now with black and white on these documents, there is an issue with regard to whether or not it can be perceived in a different manner. But again, I think the REAL ID Act instructs this Court to look at the totality of the circumstances here. Does this compel a contrary conclusion, or is it just our opinion that it could be read differently based upon the record? And I think looking at the black and white record, the agency made an appropriate decision here and the petition for review should be – you should be denied. Yes, Your Honor. Counsel, was the BIA or the AIJ required to consider information in the country conditions that might provide a plausible explanation for the PSS differential treatments of Mansari and his father? With regard to – I believe it's an interesting question, Your Honor, and they are required to consider the documents that were put before them, and it's our position that they have been – they have considered all the documents that were put before them, but for this individual's adverse credibility that he would have gone – he would have had a successful application, but really this individual, for what other reason based upon the totality of the circumstances, just simply didn't – wasn't found plausible or credible in that light. You say that there are four grounds. It seems that there are only three for the adverse credibility determination. Could you just tick them off? Oh, yes, Your Honor. There is the inconsistencies between the January 24, 2018 interview and the February 12, 2018 interview and his testimony. So I would consider that, one, that he's a practicing Christian that was not harmed or recruited. His father was also a limb and a practicing Christian, not harmed or recruited by PSS. Two, the issue with regard to his uncle, Alfred, who was also Mende, and whether or not he acted bravely or there was a bribery involved. Three, and the medical documentation. Okay. Thank you. Okay. Thank you very much. You're way over your time. Ms. Reed, you can have three minutes. Thank you, Your Honors. Thank you, Your Honor. I would just add that the government refers to inconsistencies. Before us is just one inconsistency in this statement taken by the border official. And I would also note that Mr. Mazari was a representative. He did have a hearing impairment. He was detained, and he doesn't seem to be very fluent in standard English. He was presented with this statement taken by the border official during his cross-examination. It's not even clear from the record that he had the time to review it. So although he said that he reviewed it and signed it, given the record, given his previous consistent statements, that this inconsistency that they were against them is not enough to support our adverse credibility finding under the Real ID Act. And his explanation that he doesn't know why it was there is an explanation that the BIA ignored. When the BIA found there was nothing to say that this document was inherently unreliable, when there was testimony, which is evidence from Mr. Mazari, that he didn't say that. And so in light of all of that here, these three speculations and the inconsistency, government notes to I think more than what this court can consider in his argument that really the speculations have no bearing on Mr. Mazari's veracity, and that's what to consider. And in light of the entire record, compels a reversal of his adverse credibility determination. Thank you. Thank you very much.
judges: Berzon, Katzmann, Collins